HART et al. v. WIIG et al.

(Court of Appeals of District of Columbia. Submitted May 16, 1919. Decided June 2, 1919.)

No. 1234, Patent Appeals.

PATENTS ☞91(4)—INTERFERENCES—EVIDENCE.

Evidence that junior parties to interference proceeding, who were officers and stockholders of corporation employing senior parties as mechanics, failed to file application for over a year after knowledge of senior parties' application, etc., *held* not to sustain finding by Commissioner of Patents that junior parties had sustained burden of proving that they had disclosed grain shocker invention involved to senior parties.

Appeal from the Commissioner of Patents.

Interference proceeding in the Patent Office between Floyd W. Hart and Orren E. Barber, senior parties, and Adolph Wiig, William J. Braden, and Lee R. Prather, junior parties. From a decision of the Commissioner of Patents in favor of the junior parties, the senior parties appeal. Reversed.

Lynn A. Williams and Williams, Bradbury & See, all of Chicago, Ill., for appellants.

Percy H. Moore, of Washington, D. C., and Milton S. Crandall, of Sioux City, Iowa, for appellees.

VAN ORSDEL, Associate Justice. This appeal is by the senior parties, Hart and Barber, from the decision of the Commissioner of Patents awarding priority of invention to appellees, the junior parties. Appellants filed their application August 14, 1914, on which a patent was issued May 9, 1916. Appellees filed their application August 24, 1915. The invention relates to a grain shocker, to be attached to and operated in conjunction with a grain binder. The Examiner of Interferences awarded priority to appellees. This decision was reversed by the Board of Examiners in Chief. The Commissioner reversed the Board, and, in effect, sustained the Examiner.

It is unnecessary to examine the claims of the issue, since the interference turns solely upon the question of originality. The appellees are officers or stockholders in the Peerless Shocker Manufacturing Company, of Sioux City, Iowa. Appellants were mechanics in the employ of the Peerless Company at the time they constructed the machine in issue. The first machine, constructed in the winter or spring of 1914, was found to be inoperative. A second machine was begun

---

about May 1, 1914, and completed and tested out in the July following. Appellants conducted their work in a private room constructed for the purpose in the factory of the Peerless Company.

Appellee Wiig, the president of the company, is the only one who, it is claimed, gave appellants instructions as to the construction of the machine. While Wiig is corroborated in some particulars by a number of the witnesses, all but one of whom are stockholders in the Peerless Company, it does not appear that either Braden or Prather gave appellants any instructions as to how they should proceed to construct the machine. Nor is any witness able to testify to any specific instructions alleged to have been given by Wiig. Although appellees allege the making of drawings in their preliminary statement, it does not appear that any sketch or any drawing of any kind was furnished by Wiig as a guide to appellants. On the contrary, Wiig depends upon certain verbal instructions, which, in our opinion, standing alone, do not amount to such a specific disclosure of the invention as would enable a mechanic to construct it.

The Board, in its opinion, analyzing the testimony of Wiig as to the instructions given, said:

"Probably the most specific statement, and in fact the only statement made by Wiig as to details of construction, is that contained in his answer to Q. 20, W. B. and P. Records. Asked by his attorney what description he gave to Hart when he first talked to Hart about working on this invention, Wiig says: 'I laid out the plans to him, to give him the idea as to how the shocker was to receive the bundle from the binder, conveyed back into a shock former, properly compressed, with a needle and knotter to tie around the shock; also the proper means for delivering this shock was gone over with him. My ideas were to roll the shock off by some means, either canvas or some other way of constructing a roller platform. This was all thoroughly gone over with him at the time.' There is no corroboration of this testimony of Wiig, and it is denied by Hart that he ever received any instructions from Wiig which enabled him, working with Barber, to construct the machine made and tested in the summer of 1914. It may be noted here that the instructions alleged to have been given to Hart would naturally have been embodied in the unsuccessful machine completed in the winter or spring of 1914. The successful machine that was begun on or about May 1, 1914, and finished in July of that year, involved features of construction not referred to in the answer of Wiig to Q. 20 quoted above. It is clear to us that there is nothing in the testimony of the junior parties or their witnesses to show that there was in the minds of the junior parties any clear conception of the invention in issue, including not only the result to be attained, but a concrete embodiment of means by which the desired result was to be secured."

While the case is a close one, and whichever way decided may leave the impression of possible, or even probable, mistake, we are of opinion, after a careful review of the testimony, that, in view of the burden resting upon the junior parties and their delay of over one year in filing their application after notice that appellants' application had been filed, the conclusion reached by the Board of Examiners in Chief is correct.

Therefore the decision of the Commissioner of Patents is reversed.

Reversed.